# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 26, 2018

## STATE OF TENNESSEE v. AARON HATFIELD

**Appeal from the Criminal Court for Knox County**
**No. 111759     Bob McGee, Judge**

FILED

JAN 0 3 2019

Clerk of the Appellate Courts
Rec'd By _____

**No. E2018-00041-CCA-R3-CD**

The defendant, Aaron Hatfield, appeals the denial of his bid for judicial diversion of the three-year sentence imposed for his Knox County Criminal Court guilty-pleaded conviction of aggravated assault. Following our review, we conclude that the defendant is entitled to judicial diversion. We remand the case for entry of an order placing the defendant on judicial diversion under the same terms and conditions of the previously-imposed sentence of probation.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. ROBERT L. HOLLOWAY, JR., J., filed a dissenting opinion.

Mark E. Stephens, District Public Defender, and Jonathan Harwell, Assistant District Public Defender (on appeal); and Sarah Parker, Assistant District Public Defender (at plea and sentencing), for the appellant, Aaron Hatfield.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Charme P. Allen, District Attorney General; and Debbie Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 6, 2017, the defendant pleaded guilty to a single count of aggravated assault based upon his attacking the victim, Kylie Gainers, in exchange for a three-year sentence with the manner of service of the sentence to be determined by the trial court. At the plea submission hearing, the State provided the following summary of facts:

Your Honor, if we were called to trial in this matter, we could call the witnesses listed on the information. The testimony would be that Karen Heights, with the Knoxville Police Department, responded to a domestic call at 430 East Oldham Avenue, in Knox County, Tennessee; that once she arrived on scene, she spoke with a . . . Jolie Bonavita, who said she had come over to pick up her granddaughter, Kylie Gainers and discovered that Ms. Gainers had been assaulted by her boyfriend, [the defendant].

Officer Heights then spoke with Kylie Gainers. She stated, Kylie told Officer Heights that she had come to her boyfriend's house about 4:00 p.m. to spend time with him before she left on vacation. When it was time to go home, he began arguing with her and became upset. He became angry at something his mother did and started taking it out on Ms. Gainers.

Ms. Gainers told Officer Heights that Mr. Hatfield pushed her into the back bedroom, threw her down on the floor and hit her, knocking her glasses off her face and breaking them. Ms. Gainers told Officer Heights that he then placed his knees on her chest and ribs and began pressing to where she couldn't breathe and he would not let her up.

Ms. Gainers told Officer Heights that at one point in time, Mr. Hatfield put his hands around her neck and began choking her. When he finally did let her up, she was attempting to leave, but he kept blocking her way to the door and pushing her back in and telling her that the only way she was going to leave was in a casket.

During that time, Ms. Gainers' mother and grandmother were attempting to contact Ms. Gainers on her cell phone, but Mr. Hatfield had taken it away from her and would not let her have it back in order to talk to them.

It was only when Kylie Gainers' grandmother texted that she was calling the police and that she was out in front of the house that Mr. Hatfield gave her phone back and let her leave out the back door.

-2-

Officers did observe a mark on Ms. Gainers' forehead, a small abrasion on her right arm and both knees, and a small mark on the right side of her neck.

At the sentencing hearing, the defendant asked the trial court for a judicial diversion placement, citing primarily his lack of criminal history or problems with alcohol or drugs. The State opposed the placement, citing primarily the defendant's failure to take responsibility for his actions, the seriousness of the offense, and the defendant's lack of social structure to facilitate his completion of diversion.

The defendant's version of the offense, which was included in the presentence report exhibited to the sentencing hearing provided:

> My girlfriend came over to my house to spend time with me before she went on vacation and me and my mom start arguing so I told my girlfriend that we was going to leave and I was upset so when we got outside my girl was yelling at me and told me not to take it out on her so I took her around back because it was raining outside and we was arguing and she pushed me so I pushed her back and she fell down and her glasses broke then she gets up and tr[i]ed to push me again so I did the same and she fell back down and I put my knee on her chest and I was telling her to calm down or I was not going to let her up and she grab[b]ed my hair and was pulling it so I did the same to her and I took her phone and she came at me and she pushed me and I fell down and I got mad so I put my arm close to her neck and held her down and I let her up and told her to calm down so I gave her phone back and I told her to let me walk her home and she s[ai]d no she was trying to go by herself and I s[aid] no so I did not let her and her family called her and came to pick her up and they called the cops and she started crying and I got locked up and she was going to break up with me and I s[ai]d the only way that going to happen is when you['re] in a casket.

The victim's statement provided:

> I went to spen[d] time with Aaron before I went on vacation the next day. We were at his moms. He got mad at his mom and we went outside and he started getting mad at me and

-3-

was pushing and pulling me into the backyard. When we got to the gate he picked me up and carried me into the back yard and threw me down. I landed face down on the back porch and my glasses flew off my face & broke. He took my phone & threw it in the yard. I ran to get it & he took it from me and took the battery out so I couldn't use it. He slung me around, pulled my hair, threw me down & put his hand over my mouth so I couldn't scream.

He put his knee on my ribs to hold me down & I couldn't breathe. At some point he put me in a choke hold from behind and lifted me off the ground choking me. He told me the only way I was leaving was in a casket. My family finally found me & called the police.

The trial court found that "as far as the physical and mental health conditions concerned, he should be able to comply and be compliant with probation." The court described the defendant's social history as "sparse" and noted that the defendant, who had been placed in foster care at a young age, had had "a troubled upbringing through no fault of his own." The court also noted that the defendant was "developing a church home, apparently, and that certainly speaks well of a person's social history." The court found that the defendant had no criminal history but that he had "simply stated himself he got fired from McDonald's for stealing money." The court observed that, as to the defendant's potential for rehabilitation, "there's not much to base a prediction on . . . but actually, that works to his benefit." The court found the circumstances of the offense to be "very aggravated," stating, "Choking . . . is a very dangerous kind of assault. It's easy to break or damage the fragile bones and structures in the human throat, and it's just very dangerous. It was very aggravated. It went on for a while. There were a couple of different kinds of choking involved." With regard to the deterrence value to the defendant and others, the trial court expressed concern, explaining, "[W]hen he gave his account, although the facts ended up kind of jiving pretty well, the sense of responsibility who was at fault and how bad was what he did, he soft-pedaled, and that suggests that it's not having the deterrent value that punishment should have." Finally, the court found that a grant of judicial diversion would not serve the interests of the defendant or the public because the offense occurred "within the context of a domestic relationship" and the victim had indicated other episodes of domestic violence in her relationship with the defendant. The court stated, "I'm not at all satisfied that the interest of the public would be served if it were impossible to find out about this episode and this damage to this woman in this domestic context."

## A. Judicial Diversion

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*Id.* (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific

factors applicable to the case before it." *King*, 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id.* Instead, "the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id.* at 328.

Here, the record establishes that the trial court considered all the applicable "factors when justifying its decision on the record," that the court weighed those factors against each other, and that the court placed sufficient findings in the record as required by *Electroplating, Inc. See King*, 432 S.W.3d at 327. Accordingly, we "apply a presumption of reasonableness" to the denial of judicial diversion in this case. *See id.*

The defendant asserts that the trial court erred by concluding that the circumstances of the offense and the need for deterrence weighed against a grant of diversion when the facts did not support those findings.

"If the seriousness of the offense forms the basis for the denial" of judicial diversion, then "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (citations and internal quotation marks omitted). We agree with the defendant that the circumstances of the offense in this case cannot be so classified. The defendant was charged with aggravated assault by strangulation, *see* T.C.A. § 39-13-102(a)(1)(iv), and the factual summary provided by the State established that offense. The trial court noted, correctly, that strangulation is inherently dangerous, which explains the legislature's decision to classify it as aggravated assault. That being said, the inherent dangers of strangulation cannot form the basis of a finding that the circumstances of the offense are particularly exaggerated when the conviction offense is assault by strangulation.

We also agree with the defendant that the trial court's findings with regard to deterrence were less than coherent. The "need for deterrence" will support the denial of judicial diversion only "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a

-6-

deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000). The record does not contain any such evidence in this case. The court appeared to indicate that the defendant's "soft-pedal[ing]" the facts of the offense in his statement somehow indicated a failure of deterrence. Traditionally, a lack of candor or failure to accept responsibility could support a denial of diversion because it negatively impacts a defendant's amenability to correction. Additionally, although it is true that the versions of events offered by the defendant and the victim differ, those differences are not significant enough, in our view, to indicate a lack of candor by the defendant.

Finally, the record does not support the trial court's decision that a grant of judicial diversion in this case would not serve the needs of the public or the defendant. The trial court indicated that it did not believe diversion to be appropriate because the public in general, and any future potential romantic partner of the defendant, should be aware that the defendant had committed the offense of aggravated assault against his girlfriend. The legislature, however, has seen fit to make aggravated assault by strangulation, even of one's romantic partner, an offense eligible for judicial diversion. Consequently, the fact of the defendant's having committed that offense cannot support a denial of judicial diversion.

Because the record does not support the trial court's findings with regard to those factors that formed the basis of that court's denial of judicial diversion, we reverse the ruling of the trial court and remand the case for the entry of an order placing the defendant on judicial diversion for the same period and under the same conditions attendant to the previously-imposed sentence of probation.

JAMES CURWOOD WITT, JR., JUDGE

-7-